**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| CHRISTOPHER J. ANTONICIC, ANASTASIA ANTONICIC, GUST PAPAS, and AFRODITI PAPAS individually and as the representatives of a class of similarly-situated persons, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 1:19-cv-00101 |
| v. | ) ) ) | Hon. Robert M. Dow, Jr. |
| HSBC BANK USA, N.A., | ) ) | |
| Defendant. | ) | |

**FIRST AMENDED CLASS ACTION COMPLAINT**

Plaintiffs, Christopher J. Antonicic and Anastasia Antonicic (the "Antonicics") and Gust Papas and Afroditi Papas (the "Papases") (collectively, "Plaintiffs"), through their attorneys, bring this action on behalf of themselves and all others similarly situated and allege the following against Defendant, HSBC Bank USA, N.A. ("HSBC"):

**PRELIMINARY STATEMENT**

1.     This case challenges HSBC's practice of assessing and collecting inspection fees while providing related services to mortgages in default.  HSBC's default-related inspection fees violate the regulations promulgated pursuant to the United States Department of Housing and Urban Development ("HUD"), and the contractual language of its assigned mortgage agreements.

2.     This case arises from the Federal Housing Administration's ("FHA") mortgage insurance program.  The FHA is an entity within HUD.  HUD, in turn, was created under the National Housing Act ("NHA"), 12 U.S.C. § 1701c.

3.      The NHA was passed by Congress to promote the availability of low and moderate-income housing.  *Capitol Mortg. Bankers, Inc. v. Cuomo*, 222 F.3d 151, 152 (4th Cir. 2000).

4.      Under its mortgage insurance program, the FHA agrees to protect mortgage lenders against the risk of loss caused by borrowers' non-payment, thereby making those loans more widely available to a greater portion of the population

5.      Loans insured by the FHA are subject to HUD regulations.  Furthermore, where HUD rules or regulations are incorporated into an insured mortgage, they are binding upon both the mortgagor and mortgagee.  *In re Ruiz,* 501 B.R. 76, 79 (E.D. Penn Nov. 8, 2013).

6.      HUD regulation 24 C.F.R. § 203.377 provides:

>       The mortgagee, upon learning that a property subject to a mortgage insured under this part is vacant or abandoned, shall be responsible for the inspection of such property at least monthly, if the loan thereon is in default.  When a mortgage is in default and a payment thereon is not received within 45 days of the due date, **and efforts to reach the mortgagor by telephone within that period have been unsuccessful**, the mortgagee shall be responsible for a visual inspection of the security property to determine whether the property is vacant . . .  (emphasis added).

7.      This section has been interpreted to mean that once a property has been found to be occupied, no further inspections are required by HUD or authorized for reimbursement.  *See*, Mortgagee Letter 81-26 (HUDML), 1981 WL 389744 at *1 (June 16, 1981); HUD Handbook 4330.1 Ch. 9-9(A)(c)(2)(d);[1] *see also, In re Ruiz*, 501 B.R. at 81.  In other words, once a property subject to an FHA loan in default is found to be occupied, charges for inspection fees are not allowed.

---

[1] *See*, www.hud.gov/program_offices/administration/hudclips/handbooks/hsgh/4330.1 (last visited March 11, 2019).

8.      Plaintiffs, on behalf of themselves and all others similarly situated, bring this case as a class action asserting claims against HSBC for breach of contract, unjust enrichment, and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Consumer Fraud Act").  815 ILCS 505/2, *et seq*.

9.      Plaintiffs are informed and believe, and upon such information and belief aver, that this action is based upon a common nucleus of operative facts because HSBC violated the regulations of HUD and the FHA mortgages it services in the same or similar manner. This action is based on the same legal theory, namely liability for HSBC's failure to comply with HUD regulations and the FHA mortgages it services by conducting and assessing fees for unauthorized and unnecessary property inspections of homes which, although in default, are owner-occupied.

10.     This action seeks relief expressly authorized by Illinois law as follows: (a) injunctive relief enjoining HSBC from assessing and collecting fees for unauthorized inspections of owner-occupied properties with FHA insured mortgages; (b) an award of the aggregate actual damages suffered through the assessment, payment, or judgment awards of the illegally assessed inspection fees; and (c) an award of penalties and punitive damages.

## JURISDICTION AND VENUE

11.     The United States Court for the Northern District of Illinois, Eastern Division, has federal-question jurisdiction over this matter pursuant to 28 U.S.C. § 1331.

12.     This Court has personal jurisdiction over HSBC because it regularly conducts business in this District.

13.     Venue is proper in this District pursuant to: (1) 28 U.S.C. § 1391(b)(2) in that a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this

District; and (2) 28 U.S.C. § 1391(b)(3) in that HSBC is subject to personal jurisdiction in this District.

## PARTIES

14.     The Antonicics are residents of Illinois over the age of eighteen (18) and presently reside at 7673 Sprucewood Avenue, Woodridge, Illinois 60517 (the "Property").

15.     The Papases are residents of Illinois over the age of eighteen (18) and presently reside at 357 Pioneer Drive, Addison, Illinois 60101.

16.     On information and belief, HSBC, is a national bank and mortgage company headquartered in New York and doing business in DuPage County, Illinois.

## FACTS

17.     On September 5, 2008, Plaintiffs entered into an FHA insured mortgage with HSBC (the "Mortgage").  A true and correct copy of the Mortgage is attached as **Exhibit A**.

18.     On May 28, 2010, the Antonicics filed a Voluntary Petition for Chapter 7 Bankruptcy in Bankruptcy Court.  *In re Antonicics*, No. 10-24349 (N.D. Ill. Bkr.), (Doc.1). The Mortgage was listed as a secured debt in the bankruptcy petition.

19.     On November 9, 2010, the Bankruptcy Court issued a discharge order, which was entered on November 11, 2010.  *In re Antonicics*, No. 10-24349 (N.D. Ill. Bkr.) (Doc. 26).

20.     The Papases were not parties to the bankruptcy petition nor subject to the discharge order.

21.     During and after the Antonicics' Petition for Bankruptcy, all parties continued with the Mortgage, with Plaintiffs making their monthly payments and HSBC accepting the same.

22.     On June 26, 2017, HSBC filed its Complaint for Mortgage Foreclosure and Reformation.

23.     Plaintiffs were served with the Complaint at the Property on June 29, 2017.

24.     The Antonicics have resided at the Property since September 5, 2008.  At all times since the Mortgage was executed, the Property was, and remains, the Antonicics' primary and only residence and was occupied by the Antonicics as such at all relevant times.

25.     In its Complaint, HSBC alleged that Plaintiffs defaulted on the Mortgage by failing to make payments due under the Note as of January 1, 2017 and continuing thereafter.

26.     On or about June 21, 2018, HSBC filed a Motion for Entry of Default and for Judgment of Foreclosure and Judicial Sale.  In connection with this motion, HSBC submitted to the Court an Affidavit of Amounts Due and Owning by Dennis Herman, Assistant Vice President of PHH Mortgage Corporation.  ("Herman Affidavit").  A true and correct copy of the Herman Affidavit is attached as **Exhibit B**.

27.     PHH Mortgage Corporation ("PHH") was contracted by HSBC to perform mortgage related services for the Property.  Most pertinent here, the Herman Affidavit indicates that Plaintiffs were assessed fees in the amount of $434.25 for property inspections. *See* **Exh. B**.

28.     HSBC has continued to charge for property inspections since the filing of the Foreclosure complaint on June 26, 2017.  These inspections are identified as "Auto PPTY Inspection Assessed."  Attached as **Exhibit C** are true and correct copies of the Plaintiffs' monthly mortgage statements reflecting property inspection fees, with loan number redacted.

29.     The attached mortgage statements identify only some of the charges for property inspections in the amount of $11.00 for inspections dated 3/7/2018, 4/10/2018, 5/7/2018, and 6/6/2018. *See* **Exh. C**.

30.    After conducting its first inspection of the Property, HSBC, knew, or should have known, that Plaintiffs occupied the Property.

31.    After serving Plaintiffs at the property with the foreclosure complaint on June 29, 2017, HSBC knew, or should have known, that Plaintiffs occupied the Property

32.    Even though HSBC knew, or should have known, that Plaintiffs occupied the Property, HSBC continued charging their account for inspection fees.

33.    Paragraph 8 of the Mortgage describes when and under what circumstances fees may be charged and collected.  This paragraph states:

> **8. Fees.** Lender may collect fees and charges authorized by the Secretary [HUD]. *See* **Exh. A**, ¶8.

34.    Although Plaintiffs have continually occupied the Property throughout the foreclosure process, HSBC never attempted to contact them regarding the inspections of the Property it conducted and charged to their account.

35.    To date, Plaintiffs have been charged at least $434.25 for inspections of the Property by HSBC even though Plaintiffs have continually and conspicuously occupied and maintained it. *See* **Exh. B**.


## CLASS ACTION ALLEGATIONS

36.    Pursuant to Federal Rules of Civil Procedure 23(a) and (b)(3), Plaintiffs bring this class action on behalf of the following National Classes and Illinois Subclass:

**A.    National Class for Count I (Breach of Contract):**

All persons who (1) within ten years prior to the filing of HSBC's foreclosure action, (2) had an FHA insured loan serviced by HSBC, (3) occupied the subject property, and (4) were charged inspection fees by HSBC while still occupying the property.

**B. National Class for Count II (Unjust Enrichment):**

All persons who (1) within five years prior to the filing of HSBC's foreclosure action, (2) had an FHA insured loan serviced by HSBC, (3) occupied the subject property, and (4) were charged inspection fees by HSBC while still occupying the property.

**C. Illinois Subclass for Count III (Violation of Illinois Consumer Fraud Act):**

All persons in Illinois who (1) within three years prior to the filing of HSBC's foreclosure action, (2) had an FHA insured loan serviced by HSBC, (3) occupied the subject property, and (4) were charged inspection fees by HSBC while still occupying the property.

Excluded from the Class and Subclass (collectively "the Class") is HSBC and its employees and agents and members of the Judiciary. Plaintiffs reserve the right to amend the Class definition upon completion of class discovery when the contours and the parameters of the class become apparent.

37.     Class Size (Fed. R. Civ. P. 23(a)(1)): On information and belief, the Class consists of more than forty (40) and likely thousands of persons who are identifiable through HSBC's records, and is so numerous that joinder of all members is impracticable.

38.     Commonality (Fed. R. Civ. P. 23 (a)(2)): There are questions of fact or law common to the class predominating over all questions affecting only individual Class Members including:

(a)     Whether HSBC's conduct in charging inspection fees constitutes breach of contract;

(b)     Whether HSBC knew or should have known that Plaintiffs and the other members of the class were occupying the mortgaged properties;

(c)     Whether HSBC was unjustly enriched by charging the inspection fees;

(d)     Whether the charging of inspection fees of owner-occupied property is an unfair, illegal, and deceptive practice which violates the Illinois Consumer Fraud and Deceptive Business Practices Act;

(e)     Whether HSBC should be enjoined from charging such inspection fees; and

(f)     Whether the class is entitled to actual damages, restitution for disgorgement of fees wrongfully obtained, and/or punitive damages.

39.     Typicality (Fed. R. Civ. P. 23(a)(3)):  Plaintiffs' claims are typical of the claims of other Class Members in that each seek relief for incurred charges that they should not have been charged, increasing their debt, increasing the judgment awards against them, or resulting in their making payments they should not have had to make.

40.     Fair and Adequate Representation (Fed. R. Civ. P. 23(a)(4)):  Plaintiffs will fairly and adequately protect the interests of the other Class Members.  Plaintiffs have retained counsel who are experienced in handling class actions and claims involving unlawful business practices. Neither Plaintiffs nor their counsel have any interests adverse or in conflict with the Class.

41.     Predominance and Superiority (Fed. R. Civ. P. 23(b)(3)):  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

(a)     Proof of liability on Plaintiffs claims will also prove liability for the claims of the Class without the need for separate or individualized proceedings;

(b)     Evidence regarding defenses or any exceptions to liability that HSBC may assert and attempt to prove will come from HSBC's records and will not require individualized or separate inquiries or proceedings;

(c)     HSBC has acted and is continuing to act pursuant to common policies or practices in the same or similar manner with respect to all Class members;

(d)     The amount likely to be recovered by individual Class members does not support individual litigation. A class action will permit a large number of relatively small claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e)     This case is inherently manageable as a class action in that:

(i)     HSBC's records and court filings will likely enable Plaintiffs to readily identify class members and establish liability and damages;

(ii)     Liability and damages can be established for Plaintiffs and the Class with the same common proofs;

(iii)     A class action will result in an orderly and expeditious administration of claims and it will foster economics of time, effort, and expense;

(iv)     A class action will contribute to uniformity of decisions concerning HSBC's practices; and

(v)     As a practical matter, the claims of the Class are likely to go unaddressed absent class certification.

## COUNT I
## BREACH OF CONTRACT

42.     Plaintiffs incorporate paragraphs 1 through 35, 36(A), 37-41 as if fully stated herein.

43.     The respective FHA mortgages of Plaintiffs and the Class Members are valid contracts.

44.     The FHA mortgages limit the types of fees and charges and the circumstances under which HSBC may collect fees and charges authorized by the Secretary of HUD.

45.     Most pertinent here, HUD does not authorize charges for inspections when a property subject to an FHA mortgage in default is found to be occupied. 24 C.F.R. § 203.377; Mortgagee Letter 81-26 (HUDML), 1981 WL 389744 at *1 (June 16, 1981); *see also, In re Ruiz*, 501 B.R. at 81.

46.     Notwithstanding this limitation, HSBC charged the Plaintiffs and the Class for numerous inspection fees throughout default and the foreclosure process despite continuously residing at their respective properties.

47.     Plaintiffs occupied the Property at all times during this process.

48.     HSBC never sent notice to Plaintiffs, or the Class, regarding the inspections nor attempted to contact them by telephone to determine whether the Property was occupied.

49.     In addition, HSBC continued to charge Plaintiffs, and the Class, for inspections after discovering that they occupied the Property.

50.     HSBC materially breached the terms of the respective FHA mortgages with Plaintiffs and the Class by charging fees for inspections that were not authorized by the Secretary of HUD.

51.     As a result of HSBC's breach, Plaintiffs and the Class Members have suffered damages in the form of being charged, assessed, having paid unauthorized inspection fees, or having judgment increase with the inclusion of the unauthorized inspection fees in foreclosure proceedings.

52.     Plaintiffs  and the Class Members have also been damaged by having to defend a foreclosure litigation, through which HSBC is attempting to recoup the unauthorized inspection fees, thereby causing Plaintiffs and the Class Members to have additional interest compounded, which increases the debt owed by each Class Member, and to have the equity that Plaintiffs and each Class Member have in their respective properties decrease by the addition of the unauthorized fees.

53.     Plaintiffs, on behalf of themselves and the Class, seek actual and compensatory damages for HSBC's breaches of contract, plus prejudgment interest, and costs.

**COUNT II**
**UNJUST ENRICHMENT (IN THE ALTERNATIVE)**

54.     Plaintiffs incorporate paragraphs 1 through 35, 36(B), 37-41 as if fully stated herein.

55.     Should this Court find that no contract provision expressly governs the claims arising from the allegations in Count I of this claim, Plaintiffs assert that HSBC knowingly received and retained benefits from Plaintiffs and the Class under circumstances that render HSBC's retention of such benefits unjust.

56.     HSBC knowingly received and benefitted from financial gain achieved by charging for unauthorized inspection fees, which increases HSBC's leverage against Plaintiffs

and Class Members in related foreclosure litigations or other attempts to rehabilitate their mortgages.

57.     Plaintiffs and the Class incurred liabilities for the payment and assessment of the unauthorized inspection fees and have conferred a benefit on HSBC.

58.     HSBC's assertion of the right to be paid such fees through this judicial foreclosure process and its retention of such fee payments is unjust, deceptive, unlawful, and against public policy and HUD regulations.

59.     As an actual and proximate result of its actions, HSBC received and retained benefits at the expense of and detriment to Plaintiffs and the Class in the form of charges, assessments, increased foreclosure judgments, an increase in bargaining position during the foreclosure litigation, and payments of unauthorized inspection fees.

60.     Plaintiffs seek removal of all charges and disgorgement and restitution of all revenue and profits gained through HSBC's unjust enrichment at the expense of Plaintiffs and the Class, plus prejudgment interest, and costs.

## COUNT III
## VIOLATION OF ILLINOIS CONSUMER FRAUD ACT – 815 ILCS 505/2

61.      Plaintiffs incorporate paragraphs 1 through 35, 36(C), 37-41 as if fully stated herein

62.     The Illinois Consumer Fraud Act prohibits unfair or deceptive acts or practices, including the "misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact."   815 ILCS 505/2.   The Illinois Consumer Fraud Act further states that such acts or

practices are unlawful "whether any person has in fact been misled, deceived or damaged thereby." *Id*.

63.     Here, HSBC charged Plaintiffs and the Class unauthorized inspection fees.  These unauthorized fees, in turn, were included in the monthly mortgage statements which incorrectly indicated that the inspection fees were due and owing. *See* **Exh. C**.

64.     In placing the inspection fees on the statements, HSBC represented to Plaintiffs and the Class that these fees were authorized under the FHA mortgages and HUD regulations, when HSBC knew, or should have known, that the fees were not authorized.

65.     HSBC's inclusion of the inspection fees on the statements was misleading and intended to induce Plaintiffs and the Class to pay such unauthorized fees or, in a more Machiavellian fashion, have this Court extract the unauthorized fees from Plaintiffs through this mortgage foreclosure action.

66.     HSBC availed itself of the judicial mortgage foreclosure process to abstract payment for unauthorized inspection fees from the Class in a substantially similar manner to its attempt with Plaintiffs' mortgage foreclosure action.

67.     As a result of HSBC's deceptive conduct in assessing and attempting to legitimize the unauthorized inspection fees, Plaintiffs and the Class were damaged by either paying the fees directly or having them deducted during the mortgage foreclosure process.

68.     HSBC's conduct in attempting to charge these fees in violation of the Mortgage and HUD regulations was offensive to public policy, oppressive, and caused substantial injury to Plaintiffs and Class Members.  Not only did HSBC's conduct increase the debt of Plaintiffs and Class Members and decrease the equity they held in their homes, this conduct occurred when the

Plaintiffs and Class Members were at their most vulnerable – *i.e.* when they were in the process of losing their homes.

69.     HSBC's deceptive attempt to assess and legitimize the unauthorized inspection fees was the direct and proximate cause of damages incurred by Plaintiffs and the Class and was done with the intent of causing Plaintiffs and the Class to pay illegal and unauthorized fees and to have courts award such fees through the foreclosure process.

70.     Accordingly, Plaintiffs, on behalf of themselves and the Class, seek actual and compensatory damages, restitution for disgorgement of monies wrongfully received, attorney's fees, prejudgment interest and costs as provided by 818 ILCS § 505/10(a) and, because of willful violations, punitive damages. *Id.*

71.     Plaintiffs also seeks an order requiring HSBC to remove all wrongfully imposed inspection fees from the accounts of Plaintiffs and the Class and enjoining HSBC from further violating the Illinois Consumer Fraud Act.

**WHEREFORE**, Plaintiffs, Christopher J. and Anastasia Antonicic and Gust and Afroditi Papas, individually and on behalf of all others similarly situated, demand judgment in their favor and against Defendant, HSBC Mortgage Servicing Corporation, as follows:

A.     That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiffs as the representative of the Class, and appoint Plaintiffs' counsel as counsel for the Class;

B.     That the Court award the aggregate actual damages of the Class Members who have been assessed, paid, or awarded the unauthorized inspection fees;

C.     That the Court order restitution for disgorgement of monies wrongfully received;

D.     That the Court require HSBC to remove outstanding charges for unauthorized inspection fees from the accounts of Class Members;

E.     That the Court enjoin HSBC from engaging in the conduct complained of herein;

F.     That the Court award prejudgment interest and punitive damages;

G.     That the Court award reasonable attorney's fees and costs; and

H.     That the Court grant such further relief as it deems just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues.

## NOTICE TO THE ILLINOIS ATTORNEY GENERAL

Plaintiffs will mail a copy of this Complaint to the Illinois Attorney General.

Respectfully Submitted,

Christopher J. and Anastasia Antonicic and Gust and Afroditi Papas, individually and as the representative for a class of similarly-situated persons

By:  /s/ Patrick J. Solberg
          Patrick J. Solberg
          One of their attorneys

Arthur C. Czaja (ARDC # 6291494)
The Law Offices Of
Arthur C. Czaja And Assoc.
7521 N. Milwaukee Avenue
Niles, Illinois 60714
Telephone: (847) 647-2106
Facsimile: (847) 647-2057
Email: arthur@czajalawoffices.com

Jeffrey A. Berman (ARDC # 6196251)
Patrick J. Solberg (ARDC # 6243928)
Anderson + Wanca
3701 Algonquin Road, Suite 500
Rolling Meadows, Illinois 60008
Telephone: (847) 368-1500
Facsimile: (847) 368-1501
Email:  jberman@andersonwanca.com
Email: psolberg@andersonwanca.com

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on March 12, 2019, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to all attorneys of record.

s/ Patrick J. Solberg _____